IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LABORERS' DISTRICT COUNCIL BUILDING AND
CONSTRUCTION INDUSTRY PENSION AND
ANNUITY FUND AND ITS
BOARD OF TRUSTEES
PO Box 37003
Philadelphia, PA 19123

LABORERS' DISTRICT COUNCIL
HEAVY AND HIGHWAY HEALTH AND WELFARE
FUND AND ITS BOARD OF TRUSTEES
PO Box 37003
Philadelphia, PA 19123

LABORERS' DISTRICT COUNCIL
BUILDING AND CONSTRUCTION HEALTH
AND WELFARE FUND AND ITS
BOARD OF TRUSTEES
PO Box 37003
Philadelphia, PA 19123

LABORERS' DISTRICT COUNCIL PREPAID
LEGAL FUND AND ITS
BOARD OF TRUSTEES
1361 Ridge Ave.
Philadelphia, PA 19123

LABORERS' DISTRICT COUNCIL EDUCATION
TRAINING/ APPRENTICESHIP FUND
AND ITS BOARD OF TRUSTEES
501 Lancaster Pike
Exton, PA 19341,

LABORERS' DISTRICT COUNCIL LABORERS'
EMPLOYERS COOPERATION AND EDUCATION
TRUST FUND AND ITS BOARD OF TRUSTEES
665 North Broad Street
Philadelphia, PA 19123

LABORERS' PHILADELPHIA AREA LOCAL
HEALTH AND SAFETY FUND
AND ITS BOARD OF TRUSTEES
665 North Broad Street
Philadelphia, PA  19123

: CIVIL ACTION NO.

CONTRACTORS' ASSOCIATION OF : 
EASTERN PENNSYLVANIA :
1500 Walnut Street, Suite 1105 :
Philadelphia, PA 19102, :
:
GENERAL BUILDING CONTRACTORS' :
ASSOCIATION :
36 S. 18th Street :
Philadelphia, PA 19103 :
:
HEAVY AND HIGHWAY INDUSTRY :
ADVANCEMENT PROGRAM FUND :
1500 Walnut Street, Suite 1105 :
Philadelphia, PA 19102, :
:
    and :
:
THE LABORERS' DISTRICT COUNCIL :
OF THE METROPOLITAN AREA OF :
PHILADELPHIA AND VICINITY, :
LABORERS' INTERNATIONAL UNION OF NORTH :
AMERICA, :
665 N. Broad Street :
Philadelphia, PA 19123 :
:
:
                      Plaintiffs, :
    v. :
:
:
    and, :
:
J.G. NASCON, INC. :
1400 Industrial Highway :
Eddystone, PA 19022 :
                      Defendant. :
:
:

2

## COMPLAINT

Plaintiffs, by and through their undersigned attorneys, hereby file this Complaint against J.G. NASCON, INC. (hereafter referred to as "J.G. NASCON") In support of their claims, Plaintiffs aver as follows:

## THE PARTIES

1. The Laborers' District Council Building and Construction Industry Pension and Annuity Fund ("Pension Fund") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended, ("the LMRA"), 29 U.S.C. §186(c)(5), and an employee benefit plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1002(3). The Board of Trustees of the Pension Fund ("Pension Fund Trustees") manages and controls the Pension Fund. The Trustees of the Pension Fund are fiduciaries within the meaning of section 502(a)(1)(3) of ERISA, 29 U.S.C., Section 1132(a)(1)(3). The Pension Fund Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of the Pension Fund and its participants and beneficiaries.

2. The Laborers' District Council Heavy and Highway Health and Welfare Fund ("Heavy Health and Welfare Fund") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), and an employee benefit plan under ERISA, 29 U.S.C. §1002(3). Plaintiff Board of Trustees of the Heavy Health and Welfare Fund

("Heavy Health and Welfare Fund Trustees") manages and controls the Heavy Health and Welfare Fund. The Trustees of the Heavy Health and Welfare Fund are fiduciaries within the meaning of section 502(a)(1)(3) of ERISA, 29 U.S.C., Section 1132(a)(1)(3). The Heavy Health and Welfare Fund Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of the Heavy Health and Welfare Fund and its participants and beneficiaries.

3. The Laborers' District Council Building and Construction Health and Welfare Fund ("Building Health and Welfare Fund") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), and an employee benefit plan under ERISA, 29 U.S.C. §1002(3). Plaintiff Board of Trustees of the Building and Construction Health and Welfare Fund ("Building Health and Welfare Fund Trustees") manages and controls the Health and Welfare Fund. The Trustees of the Building Health and Welfare Fund are fiduciaries within the meaning of section 502(a)(1)(3) of ERISA, 29 U.S.C., Section 1132(a)(1)(3). The Building Health and Welfare Fund Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of the Building Health and Welfare Fund and its participants and beneficiaries.

4. The Laborers' District Council Prepaid Legal Fund ("Prepaid Legal") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), and an employee benefit plan under ERISA, 29 U.S.C. §1002(3). The Board of Trustees of the Prepaid Legal Fund ("Legal Services Fund Trustees") manages and controls the Prepaid Legal Fund. The Trustees of the Prepaid Legal Fund are fiduciaries within the meaning

4

of section 502(a)(1)(3) of ERISA, 29 U.S.C., § 1132(a)(1)(3). The Prepaid Legal Fund Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of the Prepaid Legal Fund and its participants and beneficiaries.

5. The Laborers' District Council Education Training/Apprenticeship Fund ("Training Fund") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), and an employee benefit plan under ERISA, 29 U.S.C. §1002(3). The Board of Trustees of the Training Fund ("Training Fund Trustees") manages and controls the Training Fund. The Trustees of the Training Fund are fiduciaries within the meaning of section 502(a)(1)(3) of ERISA, 29 U.S.C., Section 1132(a)(1)(3). The Training Fund Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of the Education Fund and its participants and beneficiaries.

6. The Laborers' District Council Laborers' Employers Cooperation and Education Trust Fund ("LECET") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), and an employee benefit plan under ERISA, 29 U.S.C. §1002(3). The Board of Trustees of the LECET ("LECET Trustees") manages and controls the Education Fund. The Trustees of LECET are fiduciaries within the meaning of section 502(a)(1)(3) of ERISA, 29 U.S.C., Section 1132(a)(1)(3). The LECET Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of LECET Fund and their participants and beneficiaries.

7. The Laborers' Philadelphia Area Local Health and Safety Fund ("Health and Safety Fund") is a trust fund established and maintained pursuant to the provisions of Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5) for the purpose of providing health and safety benefits through qualified health and safety benefit programs. Plaintiff Board of Trustees of the Health and Safety Fund ("Health and Safety Fund Trustees") manages and controls the Health and Safety Fund. The Trustees of the Health and Safety Fund are fiduciaries of the Health and Safety Fund and the Health and Safety Fund Trustees, individually and collectively, bring this action in their fiduciary capacity on behalf of the Health and Safety Fund and its participants and beneficiaries.

8. Except for the Health and Safety Fund, each of the aforementioned Funds is a "multi-employer plan" under ERISA, 29 U.S.C. §1002(37). Each of the aforementioned Funds and plaintiffs maintains its principal place of business in Philadelphia, PA, with the exception of the Training Fund which maintains its principal place of business in Exton, PA, at the addresses set forth in the caption which are incorporated by reference here.

9. The aforementioned Funds will be hereinafter referred to collectively as the "Funds". The Funds, which are employee benefit plans under ERISA, 29 U.S.C. §1002(3), will be hereinafter referred to collectively as the "ERISA Funds".

10. The Contractors' Association of Eastern Pennsylvania ("CAEP") is an association of construction industry contractors and service providers. The CAEP sponsors and manages the CAEP Industry Advancement Program ("IAP") which is funded by contributions required under the Collective Bargaining

6

Agreement between the CAEP and the Laborers' District Council.

11.  The General Building Contractors Association ("GBCA") is an association of construction industry contractors and service providers. The GBCA sponsors and manages the GBCA Industry Advancement Program ("IAP") which is funded by contributions required under the Collective Bargaining Agreement between the GBCA and the Laborers' District Council.

12.  The Laborers' District Council of the Metropolitan Area of Philadelphia and Vicinity, Laborers' International Union of North America ("the Union" or "Laborers' District Council") is an unincorporated labor organization engaged in representing employees for the purpose of collective bargaining.

13.  The Union's Political Action Committee Fund (hereafter "PAC") is funded by employers' deductions of wages from all employees covered by the Agreement and contributions are made to the Laborers' District Council.

14.  Upon information and belief, J.G. NASCON is an employer in an industry affecting commerce within the meaning of Section 301(a) of the LMRA, 29 U.S.C. §185(a), and ERISA, 29 U.S.C. §1002(5). J.G. NASCON'S registered business address is 1400 Industrial Highway, Eddystone, PA 19022.

## JURISDICTION AND VENUE

15.  This Court has jurisdiction over the causes of action, alleging a violation of ERISA pursuant to ERISA, 29 U.S.C. §§1132(a)(3), (d)(1) & 1145. This Court has jurisdiction over the causes of action, alleging a violation of the LMRA pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a). This Court has

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. §1367(a) because the state law claims derive from a common nucleus of operative fact from Plaintiffs' federal law claims.

16. Venue is proper in the Eastern District of Pennsylvania pursuant to 29 U.S.C. §185(a) and 29 U.S.C. §1132(e)(2). The above-identified Funds are administered in said judicial district and, pursuant to 28 U.S.C. §1391, substantial parts of the events giving rise to the claims (the projects performed) are believed to have occurred within this judicial district. In addition, J.G. NASCON regularly conducts business within this judicial district.

## **COMMON FACTS**

17. Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 16 of the Complaint as if set forth in their entirety herein.

18. The aforementioned Funds are created and administered pursuant to the terms of Trust Agreements that are properly executed pursuant to state and local law.

19. Since at least June 4, 2012, J.G. NASCON, was signatory to, or otherwise bound by, a Collective Bargaining Agreement between the GBCA and the Concrete Contractors' Association and the Union which sets forth, inter alia, the wages, hours, and other terms and conditions of employment of laborers employed by J.G. NASCON. See Exhibit A, the Collective Bargaining Agreement(s) (hereafter referred to as the "GBCA CBA" or "CBA").

20. Since at least July 1, 2010, J.G. NASCON has been a member of the CAEP.

21. Since at least July 1, 2010 to date, and by virtue of membership with the CAEP, J.G. NASCON, was signatory to, or otherwise bound by, a Collective Bargaining Agreement between the CAEP and the Concrete Contractors' Association and the Union which sets forth, inter alia, the wages, hours, and other terms and conditions of employment of laborers employed by J.G. NASCON. See Exhibit B, the Collective Bargaining Agreement(s) (hereafter referred to as the "CAEP CBA" or "CBA").

22. The CBAs automatically renew from year to year unless either party gives notice of intent to terminate in writing to the other party ninety (90) days prior to any expiration date of the agreement. To date, neither party has given such notice of intention to terminate the CBA.

23. J.G. NASCON also agreed to abide by the Trust Agreements, as amended, pertaining to the Funds and incorporated into the relevant CBAs. Throughout this Complaint, references to the CBAs include and incorporate the related Trust Agreements.

24. Pursuant to said CBAs, J.G. NASCON has an obligation to submit accurate remittance reports and the appropriate contributions and deductions to the Plaintiffs on a monthly basis following the month in which contributions and deductions accrued.

25. Pursuant to said CBAs and by virtue of its consent to become bound by the terms and conditions of employment negotiated by and between the CAEP and the Union covering all work performed within the trade and geographic jurisdiction of the Union, J.G. NASCON is required to remit the contributions and

deductions (including, but not limited to, amounts for field dues and PAC) due for all hours of work performed by its employees under the CBAs in the preceding month to the Plaintiffs.

26. Perry N. Blackman, CPA, conducted a payroll audit of Defendant.

27. Defendant underreported to the Plaintiffs the number of hours worked by J.G. NASCON's employees under the CBA(s). Perry N. Blackman, CPA, prepared a report dated June 13, 2013 which reported amounts of principal due from Defendant to Plaintiffs in the amount of at least $107,208.75 for the period July 1, 2012 to March 31, 2012. The report also stated that an audit fee of $1,800.00 was due as well as accrued interest, at that time, of $1,505.95. See Exhibit C attached hereto.

28. The Plaintiffs notified J.G. NASCON of this delinquency, and demanded payment and delinquent reports. In addition to the interest due as set forth in the audit report the Plaintiffs also demanded interest that was due from late payments made. Interest continues to accrue daily. For example, as of approximately September 25, 2013, interest on late payments amounts to at least $8,602.86. See Exhibit D.

29. On or about June 25, 2013, J.G. NASCON submitted reports to the Plaintiff Funds for the period December 1, 2012 through May 31, 2013 reporting it owed $170,618.45 to the Funds. See the attached Exhibit E.

30. Subsequently, J.G. NASCON submitted partial payments to the Funds of approximately $35,938.87, $24,996.40, and $44,210.82. Thus, by Defendant's

own reports for the period December 1, 2012 to May 31, 2013, at this time, Defendant owes Plaintiffs at least $65,472.36 in principal.

31. J.G. NASCON is presently still delinquent in the reports, contributions, and/or deductions it owes to the Plaintiffs and has failed or refused to submit the appropriate reports, contributions and deductions due under the CBAs to the Plaintiffs during at least the following period: July 1, 2012 through the present. Plaintiffs cannot accurately determine the full amount J.G. NASCON owes to the Plaintiffs for the above period until permitted to conduct an audit of J.G. NASCON's records for the period April 1, 2013 through judgment.

32. Pursuant to the CBAs, J.G. NASCON also agreed to pay and owes the Plaintiffs interest at a rate of at least prime plus two, accrued interest, liquidated damages, costs of litigation and audit fees, and attorneys' fees. Interest continues and has continued to accrue daily.

33. Pursuant to the CBAs, J.G. NASCON will also owe the Plaintiffs any audit fees necessary to ascertain the amounts owed through judgment.

34. Because J.G. NASCON violated its reporting and contribution obligations under the CBAs, the Plaintiffs have been forced to incur additional administrative and legal expenses in ascertaining the extent of J.G. NASCON's violation and in attempting to correct the arrearage.

35. As long as the delinquent contributions and deductions and accompanying costs, fines, liquidated damages and penalties remain unpaid and/or continue to accrue, the Plaintiffs lose the benefits of monetary income that would

otherwise be realized if the reports, contributions and deductions had been remitted by J.G. NASCON in a timely fashion.

36. J.G. NASCON's continued violation of the CBAs irreparably injures the Plaintiffs.

## COUNT I
## CAEP ERISA CLAIM

37. Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 36 of the Complaint as if set forth in their entirety herein.

38. J.G. NASCON has failed to make all the contributions and deductions to the ERISA Funds as required by the CAEP CBA and in violation of 29 U.S.C. §1145 for the period of at least July 1, 2012 and thereafter.

39. J.G. NASCON owes the ERISA Funds an amount to be determined at and through trial for contributions and deductions for the period of at least July 1, 2012 through the present, plus audit fees, interest, liquidated damages, costs of litigation and attorneys' fees.

40. Section 502(a)(3)(B)(ii) of ERISA permits the Plaintiffs to seek equitable enforcement of the terms of the CAEP CBA and related Trust Agreements.

**WHEREFORE,** the ERISA Funds and their respective Board of Trustees request that this Court enter judgment in their favor and against J.G. NASCON; that the Court order that J.G. NASCON cooperate with an independent payroll audit conducted by the Plaintiffs; and that the Court award the ERISA Funds and their respective Board of Trustees damages from J.G. NASCON as set forth below:

      a.    the amount of total unpaid contributions, deductions, accrued interest, audit fees, costs, fines, liquidated damages and penalties determined to be due and owing to the Plaintiffs before, during and as a consequence of the pendency of this lawsuit;

      b.    interest on the unpaid contributions and deductions at the rate provided under §502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2);

      c.    an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages as prescribed by the plan, the collective bargaining agreement(s), and/or by statute;

      d.    reasonable attorneys' fees and costs of the action; and

      e.    such other legal or equitable relief as this Court may deem appropriate.

## COUNT II
## BREACH OF CAEP CBA

41.    Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 40 of the Complaint as if set forth in their entirety herein.

42.    J.G. NASCON has failed to make all the contributions and deductions to the Plaintiffs as required by the CAEP CBA for the period of at least July 1, 2012 and thereafter.

43.    In addition, J.G. NASCON, in violation of the CAEP CBA, has failed to submit accurate and timely remittance reports during the period of at least July 1, 2012 through the present.

44. J.G. NASCON's failure to make the required timely contributions and deductions and its failure to comply with its obligation to send to the Plaintiffs remittance reports that fully, accurately, and completely report the hours of work performed by its employees under the CAEP CBA is a breach of contract and said breach is a violation of § 301 of the LMRA, 29 U.S.C. § 185(a).

45. The Plaintiffs have been damaged by the failure of J.G. NASCON to make contributions and deductions and submit accurate remittance reports as required by the CAEP CBA.

**WHEREFORE,** Plaintiffs request that this Court enter judgment in favor of Plaintiffs and against J.G. NASCON; that the Court order that J.G. NASCON cooperate with an independent payroll audit conducted by the Plaintiffs; and that the Court award Plaintiffs damages from J.G. NASCON as set forth below:

    a. the total unpaid contributions, deductions, accrued interest, audit fees, costs, fines, liquidated damages and penalties determined to be due and owing to the Plaintiffs before, during and as a consequence of the pendency of this lawsuit;

    b. any additional amounts which are found to be due and owing during the pendency of this litigation including, but not limited to, accrued interest, audit fees, and attorneys' fees incurred in this action or in the collection and enforcement of any judgment, as provided by the CBA;

    c. such other legal or equitable relief as this Court may deem appropriate.

## COUNT III
## CAEP THIRD PARTY BENEFICIARY CLAIM

46. Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 45 of the Complaint as if set forth in their entirety herein.

47. The CAEP, the CAEP IAP, the Union and/or the PAC are intended third party beneficiaries to the CAEP CBA.

48. J.G. NASCON was required under the terms and conditions of the CAEP CBA to remit contributions and/or deductions to the CAEP IAP, the Union and/or the PAC.

49. J.G. NASCON's failure to make the required timely contributions and/or deductions and its failure to comply with its obligation to send to the Plaintiffs remittance reports that fully, accurately, and completely report the hours of work performed by its employees under the CAEP CBA is a breach of contract and the CAEP, CAEP IAP, the Union and/or the PAC have been deprived of the benefit flowing therefrom to which they are entitled.

**WHEREFORE,** Plaintiffs CAEP, CAEP IAP, the Union and the PAC request that this Court enter judgment in their favor and against J.G. NASCON and order that J.G. NASCON cooperate with an independent payroll audit conducted by the Plaintiffs and enter judgment against J.G. NASCON and in favor of the CAEP, CAEP IAP, the Union and the PAC in the amount of total unpaid contributions and deductions, accrued interest, audit fees, costs, fines, liquidated damages and penalties determined to be due and owing to the CAEP, CAEP IAP, the Union and the PAC before, during and as a consequence of the pendency of this lawsuit; plus any additional amounts which are found to be due and owed during the pendency

of this litigation including, but not limited to, accrued interest, audit fees, and attorneys' fees incurred in this action or in the collection and enforcement of any judgment, as provided by the CAEP CBA; and that the Court award the CAEP, CAEP IAP, the Union and the PAC such other legal or equitable relief as this Court may deem appropriate.

## COUNT IV
## DEMAND FOR AUDIT

50. Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 49 of the Complaint as if set forth in their entirety herein.

51. The CBAs and its trust agreements authorize the Plaintiffs' auditors to audit the Employers bound by the Agreements.

52. Unless an audit is performed through judgment, Plaintiffs will not have sufficient information or knowledge to plead or seek the precise nature, extent, and amount of J.G. NASCON's ongoing delinquency.

**WHEREFORE**, Plaintiffs request the Court order J.G. NASCON, its officers, employees, representatives and/or agents to permit an audit by the Plaintiffs' auditor of all records under J.G. NASCON's actual or constructive control and, in the absence of said records, to cooperate fully in alternative method(s) for the determination of work for which contributions are due; and to grant Plaintiffs such other relief as this Court deems just, necessary, and appropriate including, but not limited to a judgment for additional amounts found

due and owing, an audit through judgment, and attorney fees and costs.

Date: 10-8-13   By:   *Mariellen Bello*
Mariellen Bello, Esquire
Attorney I.D. No. 60375
Susanin, Widman & Brennan, P.C.
1285 Drummers Lane, Suite 202
Wayne, PA 19087
(610) 337-4510

Respectfully, submitted,

Attorneys for Plaintiffs

17

## **CERTIFICATE OF SERVICE**

I, Mariellen Bello, Esquire, do hereby certify that on this day I caused a true and correct copy of the foregoing Complaint to be served via first class mail, postage prepaid upon the following:

>Secretary of Labor
>200 Constitution Avenue, NW
>Washington, DC 20224

>and

>Secretary of Treasury
>1500 Pennsylvania Avenue, NW
>Washington D.C. 20220

Date: 10-8-13

Mariellen Bello